# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

RACHELLE BLANKENSHIP

         Plaintiff,

v.

THE UNIVERSITY OF TEXAS
SOUTHWESTERN MEDICAL CENTER AND
GEORGES TABBAL, MD

         Defendants.

Case No. 4:18-cv-323

<u>JURY TRIAL DEMANDED</u>

---

<u>**PLAINTIFF RACHELLE BLANKENSHIP'S OBJECTIONS AND ANSWERS TO
DEFENDANT, THE UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL
CENTER'S FIRST SET OF INTERROGATORIES TO PLAINTIFF**</u>

Plaintiff Rachelle Blankenship ("Plaintiff" or "Blankenship") hereby makes the following objections and responses to Defendant The University of Texas Southwestern Medical Center's ("Defendant" or "UTSW") First Set of Interrogatories to Plaintiff ("Interrogatories") as follows:

<u>**GENERAL STATEMENT**</u>

The responses provided here are submitted on behalf of Ms. Blankenship and reflect Ms. Blankenship's continuing investigation of facts and discovery of information and documents relating to the claims and defenses at issue in this litigation. Accordingly, Ms. Blankenship's responses to these Interrogatories are based only upon Ms. Blankenship's current knowledge and reasonable belief. Ms. Blankenship expressly reserves the right to modify, amend, and/ or supplement any response and to assert additional objections to these Interrogatories as necessary and/ or appropriate.

Nothing in these responses shall be deemed an admission by Ms. Blankenship regarding the existence of any information, the relevance or admissibility of any information for any purpose, or the truth or accuracy of any statement of characterization contained in any Interrogatory. Where Ms. Blankenship responds by identifying individuals with knowledge concerning a particular subject matter identified in an Interrogatory, such response should not be construed as an admission concerning the accuracy of UTSW characterization of the subject matter.

1

## **GENERAL OBJECTIONS**

1.     Ms. Blankenship objects to the Interrogatories and to the Definitions and Instructions contained therein to the extent that they purport to create obligations that exceed the requirements of Rules 26 and 33 of the Federal Rules of Civil Procedure, the Local Rules of this Court and/or applicable court orders.

2.     Ms. Blankenship objects to the Interrogatories to the extent that they are vague, ambiguous, duplicative, overbroad, unduly burdensome and/ or seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3.     Ms. Blankenship objects to the Interrogatories to the extent that they seek information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege, doctrine or immunity.  Nothing contained in Ms. Blankenship's responses is intended to be, or in any way shall be deemed, a waiver of any such applicable privilege, doctrine, or immunity.

4.     Ms. Blankenship does not concede that any Interrogatory to which Ms. Blankenship responds and /or objects is relevant to the subject matter of this litigation or reasonably calculated to lead to the discovery of admissible evidence.  Ms. Blankenship expressly reserves the right to object to further discovery into the subject matter of these Interrogatories.

5.     Ms. Blankenship objects to the instructions to the extent they seek to impose an obligation on Ms. Blankenship to gather information from third parties not under her control when responding to the Interrogatories.  Ms. Blankenship further objects to these instructions to the extent they attempt to exceed the requirements of the Federal Rules of Civil Procedure, the Local Rules of this Court and/ or any applicable court orders.

6.     Ms. Blankenship objects to the definitions of "You," "Your" or "Yours" to the extent they include entities or persons which Ms. Blankenship does not control, and to the extent they purport to require Ms. Blankenship to gather information from third parties, or to disclose attorney-client privileged communications or attorney work product, when responding to the Interrogatories.

7.     Ms. Blankenship objects to the Interrogatories to the extent they call for information more readily ascertainable by UTSW than by Ms. Blankenship, information in UTSW's possession, or information that is available to UTSW from public or other sources.

8.     Ms. Blankenship objects to each Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.

9.      Ms. Blankenship objects to each Interrogatory as being overbroad to the extent it fails to specify a relevant time period for which information is requested or to the extent the specified time period is irrelevant.

10.     Ms. Blankenship objects to the Interrogatories to the extent they seek premature expert discovery.

11.     Ms. Blankenship hereby incorporates each of the foregoing general objections into the specific objections that follow whether specifically identified or not.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

State your full name, address, telephone number, driver's license number, and all other names you have ever used or been known by, and the same information for any current or former spouse.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

Rachelle Blankenship; 128 Wrenwood Drive, Coppell, TX 75019; (817) 412-1071; 26733949; Henning (maiden name).  Former spouse: Howard Blankenship; 7520 Bradford Pear, Irving, Texas; (817) 564-3064.

**INTERROGATORY NO. 2:**

Please identify each and every adverse employment action and/or effect on any term, condition, or privilege of employment which you contend resulted from the alleged discriminatory and/or retaliatory animus of UTSW, including the nature and facts of any unwelcome harassment and any treatment you alleged to have resulted from any report of sexual harassment or participation in any other protected activity as alleged in your Complaint. For each employment action identified, please state the following: (a) the date upon which the adverse employment action occurred; (b) the name, address, and telephone number of each person whom you allege performed and/or assisted in performing the adverse employment action against you; (c) a general description of

what adverse employment action was taken against you; (d) the name(s), address(es), and telephone number(s) of each person whom you claim and/or believe witnessed the adverse employment action.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.  Plaintiff objects to this Interrogatory as a premature contention interrogatory which should be deferred until discovery is near an end.  Plaintiff objects to this Interrogatory as calling for information that Defendant can ascertain through materials already in its possession, custody, or control.  Plaintiff objects to this Interrogatory as calling for legal conclusions, legal theories, and/ or expert testimony.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

See Plaintiff's live complaint on file in this action and documents produced in this case, including her previous reports of discrimination.

On August 2, 2017, Dr. Tabbal personally changed Plaintiff's job duties.

On October 26, 2017, Plaintiff was counseled by Dunja Morgareidge.  The decision to terminate Plaintiff had already been made by Dr. Tabbal and Dunja, and this "counseling" served no purpose other than to harass, intimidate, and provide documentation to bolster the illegitimate termination.

On October 30, 2017, Dr. Tabbal ran an unscheduled, self-audit of his medical records and alleged that Plaintiff accessed them without his permission.  He and Dunja Morgareidge then contacted the privacy office and requested Plaintiff's termination.   When the privacy office only recommended suspension, they pushed for Plaintiff's termination.

On November 8, 2017 this systematic harassment culminated in UTSW terminating Plaintiff's employment.  Dunja Morgareidge signed the Intent to Terminate Letter and the letter terminating Plaintiff's employment.

Such actions left Plaintiff unemployed and without the benefits associated with her employment.  Such actions also caused Plaintiff mental anguish.

At least Dr. Georges Tabbal, Dunja Morgareidge, UTSW, and other UTSW employees participated in the adverse employment actions.

**INTERROGATORY NO. 3:**

Please identify each and every instance in which you complained about any alleged sexual harassment, discrimination and/or retaliation during the term of your employment at UTSW. For each instance identified, please state the following: (a) the date upon which you complained; (b) the name, address, and telephone number of each person to whom you complained; (c) a general description of the act about which you complained; and (d) whether your complaint was oral, written, or both.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim. Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories. Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff. Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony. Plaintiff objects to this Interrogatory as calling for information that Defendant can ascertain through materials already in its possession, custody, or control.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

See Plaintiff's live complaint on file in this action and documents produced in this case, including her previous reports of discrimination.

(a) December 2016. (b) Dunja Morgareidge. (c) Ms. Blankenship told Ms. Morgareidge that she was having problems working with Dr. Tabbal and asked for her advice on how to deal with his inappropriate nature. She told her that Dr. Saxon told her that she was going to report the office's inappropriate "at-risk" environment to Dr. Marple. (d) Oral.

(a) January 2017. (b) Dunja Morgareidge (c) Ms. Blankenship told Ms. Morgareidge that Tabbal was cutting off her access to shared drives and accounts, including SugarSync, Sharepoint, and the business Facebook account. Ms. Blankenship also notified Ms. Morgareidge that Dr. Tabbal would not work with her to finalize new patient documents and fee schedules. All these things made it difficult for Ms. Blankenship to do her job. (d) Oral.

(a) April 14, 2017. (b) Kimberly Alexander. (c) Ms. Blankenship called Ms. Alexander and told her about everything that was happening in the office. (d) Oral.

(a) May 2017.  (b) Dunja Morgareidge.  (c) Ms. Blankenship told Ms. Morgareidge that she was still having problems working with Dr. Tabbal and that he would try to unfairly blame her for his mistakes, including blaming her for not properly downloading patient photos to the UTSW drives. Dr. Tabbal would keep all the patient photos on his personal camera for weeks instead of giving them to Ms. Blankenship to download onto the UTSW drive.  Dr. Tabbal would then pass the blame to Ms. Blankenship when the photos were not downloaded onto the UTSW drives in a timely manner.  (d) Oral.

(a) June 2017.  (b) April Wilder.  (c) Ms. Blankenship called Ms. Wilder to set up an appointment. (d) Oral.

(a) June 5, 2017.  (b) Kristin Goree.  (c) Ms. Blankenship called Ms. Goree to set up an appointment.  (d) Oral.

(a) July 10, 2017.  (b) Kristen Goree.  (c) Ms. Blankenship disclosed the difficult office environment at the Frisco office, specifically how Ms. Morgareidge and Dr. Tabbal were harassing her.  Regarding Dr. Tabbal, Ms. Blankenship told Ms. Goree that he was inappropriate and would yell a lot.  Regarding Ms. Morgareidge, Ms. Blankenship disclosed that Ms. Morgareidge would take credit for Ms. Blankenship's work, micromanage her, defame her to the other employees.  Ms. Blankenship disclosed a fear that she was being set up.  Ms. Blankenship requested a transfer, but Ms. Goree informed her that she had to have been in her position for at least one year and would need to use her vacation time to interview for a position at the main campus before she could qualify for a transfer.  (d) Oral.

(a) July 11, 2017.  (b) Kristen Goree.  (c) Ms. Blankenship called Ms. Goree regarding her deteriorating work environment.  She requested that Ms. Goree attend her annual review with Dr. Tabbal and Ms. Morgariedge.  She feared they were setting her up and needed to speak with Ms. Goree privately.  (d) Oral.

(a) July 19, 2017.  (b) Kristen Goree.  (c) Ms. Blankenship called Ms. Goree regarding her deteriorating work environment.  (d) Oral.

(a) July 19, 2017.  (b) April Wilder.  (c) Ms. Blankenship called Ms. Wilder to discuss the hostile work environment and get suggestions on how to proceed.  Ms. Blankenship told her that she had sex with Dr. Tabbal once and that he had been harassing her since then.  Ms. Blankenship told Ms. Wilder that she believed Dr. Tabbal had told others in the office about the sexual encounter.  She also told her that Deanna Clark made a comment about Ms. Blankenship's vagina in the office in front of Dr. Tabbal, and they both laughed at Ms. Blankenship's expense.  She reported this incident to Ms. Morgareidge, but Ms. Morgareidge did nothing.  Ms. Blankenship told Ms. Wilder that Dr. Tabbal bought her a cell phone and offered to give her money from his personal Schwab account.  During work hours, Ms. Blankenship said Tabbal would show videos of him in bed with another woman and would make sexual and lewd comments. He would show videos of his extensive gun collection and talk about his interest in investing in guns and night scopes, things that frightened Ms. Blankenship. She also disclosed Ms. Morgareidge's harassment and attempts

to micromanage her.  Ms. Blankenship disclosed that she was afraid that Dr. Tabbal and Dunja wanted to get rid of her.  Ms. Wilder indicated to Ms. Blankenship that she was not surprised at their behavior based on past sexual problems within that department.  (d) Oral.

(a) July 24, 2017.  (b) UT Southwestern EAP.  (c) Ms. Blankenship stated that her work situation is making it difficult to do her job.  (d) Written.

(a) September 2017.  (b) Employee Assistance Program.  (c) Ms. Blankenship sought to schedule another appointment with April Wilder.  (d) Written.

(a) September 6, 2017.  (b) Kristen Goree**.**  (c) Ms. Blankenship again expressed her desire to transfer to a different department.  She explained that she still felt that Dr. Tabbal was attempting to set her up at work and that other employees, Patty Aitsen and Naureen Premani, had expressed this as well. She also wanted to have a meeting with Ms. Goree and the other staff in a group setting. (d) Oral.

(a) September 7, 2017.  (b) Kristen Goree.  (c) Ms. Blankenship discussed a potential transfer and her continued difficulties at the Frisco office.  (d) Oral.

(a) October 2017.  (b) Dr. Kenkel's coordinator.  (c) Ms. Blankenship contacted Dr. Kenkel's coordinator via email to request a short meeting so that she could tell him about the sexual misconduct and harassment/hostile environment by Ms. Morgareidge and Tabbal. The coordinator told Ms. Blankenship that Dr. Kenkel said, "oh he just wants to say inflammatory things about Dr. Tabbal".  Ms. Blankenship then decided to cancel the meeting and go directly to HR once again.  (d) Written.

(a) October 9, 2017.  (b) Sherri Toney.  (c) Ms. Blankenship contacted Ms. Toney, Kristen Goree's supervisor, explained that she urgently needed a meeting with HR due to the terrible work situation.  (d) Oral.

(a) October 17-18, 2017.  (b) Kristen Goree.  (c) Ms. Blankenship emailed Ms. Goree in an attempt to schedule an appointment with her.  She indicated that she had already spoken with the Employee Assistance Program and that she needed Ms. Goree's guidance on important issues.  (d) Written.

(a) October 20, 2017.  (b) Olivia Perez.  (c) Ms. Blankenship contacted the EAP again to set up another appointment with April Wilder.  Ms. Perez informed Ms. Blankenship that the next available appointment was November 19, 2017.  Ms. Blankenship told Ms. Perez how Dr. Tabbal and Dunja were harassing her, and Ms. Blankenship said that she needed help.  (d) Oral.

(a) October 20, 2017.  (b) Kristen Goree.  (c) Ms. Blankenship contacted Ms. Goree in another attempt to set up an appointment with her.  Plaintiff also explained that Dunja Morgariedge would harass her if she went to the bathroom, not allow her to attend administrative meetings, billing

meetings, not include her in meeting with Texas Health Allen and try to prevent her from talking to Dr. Kenkel and HR, and that she feared retaliation from Dunja.  (d) Written.

(a) October 26, 2017.  (b) Kristen Goree.  (c) Ms. Blankenship contacted Ms. Goree in another attempt to set up an appointment with her.  (d) Written.

(a) October 30, 2017.  (b) Kristen Goree.  (c) Ms. Blankenship told Ms. Goree about Dr. Tabbal's sexual misconduct with her.  She started with Dunja's insistence that Ms. Blankenship go to Dr. Tabbal's apartment on several occasions to help transfer items to the office.  She told Ms. Goree that Dr. Tabbal had behaved inappropriately at his apartment.  She explained that the working relationship with Dr. Tabbal had been strained since that encounter.  Ms. Blankenship explained that shortly after the encounter at his apartment, Ms. Morgareidge started harassing Ms. Blankenship too.  Ms. Blankenship also told Ms. Goree that Dr. Tabbal would not work with her and was undermining her job.  She explained how she was afraid for her job because Ms. Morgareidge and Dr. Tabbal were attempting to sabotage her work.  Ms. Goree said that she would reach out to Dunja and set up a meeting.  (d) Oral.

(a) November 20, 2017.  (b) UTSW EEOC**.**  (c) Ms. Blankenship disclosed that she experienced sexual misconduct/ harassment from her supervisor; that she was terminated because she complained about the harassment; that she was falsely accused of violating HIPAA; that she was not allowed to attend trainings; and that she reported lewd comments made by a coworker; that she was targeted through inconsistent applications of UTSW policy; and that she was demoted and given more work.  (d) Written.

**<u>INTERROGATORY NO. 4</u>:**

Please describe in detail the nature and extent of all damages you claim to have sustained as a result of the allegations made the basis of this suit, including compensatory damages (back pay, front pay, out-of-pocket expenses, loss of employment benefits, and future pecuniary losses); mental anguish, emotional distress, including loss of self-esteem, anger, devastation, betrayal, and humiliation; and attorney's fees and expenses, stating the dollar amount you seek for each damage allegation. In answering this Interrogatory, please describe the means and methods used for calculating each element of damages.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories. Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, Rule 26(b)(3) or any other Rule of the Federal Rules of Civil Procedure, or any other applicable privilege or immunity.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.

Plaintiff objects to this Interrogatory as a premature contention interrogatory which should be deferred until discovery is near an end.  Plaintiff objects to this Interrogatory as calling for legal conclusions, legal theories, and/ or expert testimony.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

Plaintiff earned a salary of $52,020.00 per year at the time UTSW terminated her.  From the date of termination to the date of these Interrogatories, UTSW would have paid Plaintiff roughly $57,578.30.  Plaintiff also would have retained her employment benefits, including her health insurance and retirement benefits.  Plaintiff has been paying out of pocket to maintain her health insurance since UTSW terminated her.  Plaintiff has paid $639.01 per month for COBRA continuation coverage since UTSW terminated her.  If UTSW had not terminated Plaintiff, she would have remained at UTSW.  She would have continued earning her current salary, plus projected raises.  The exact amount of front pay will be determined by the trier of fact at trial.

Plaintiff has also suffered mental anguish, emotional distress, including loss of self-esteem, devastation, betrayal, and humiliation.  These injuries are fully described in the response to Interrogatory No. 5.

Plaintiff also seeks recovery of the attorneys' fees and costs incurred in this suit.  To date, Plaintiff has incurred $647.62 in costs.  As to attorneys' fees, Plaintiff will supplement with the amount incurred.

**INTERROGATORY NO. 5:**

Describe with particularity any alleged physical, emotional, mental and/or psychological injuries you claim to have suffered as a result of Defendant's alleged conduct, including: (1) all persons that you allege caused you such injury; (2) the words, actions or conduct made the basis of your claim for such injury; (3) the specific claimed injury as a result of the conduct of the person(s) identified; and (4) when and to whom you reported the claimed injury, what you reported, what action you requested taken, and what action you are aware of being taken

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.  Plaintiff objects to this Interrogatory as calling for information that Defendant can ascertain through materials already in its possession, custody, or control.  Plaintiff objects to this Interrogatory as calling for legal conclusions, legal theories, and/ or expert testimony.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

See Plaintiff's live complaint on file in this action and documents produced in this case.

(1) Dr. Georges Tabbal, Dunja Morgareidge, UTSW, and other UTSW employees.

(2) Dr. Georges Tabbal repeatedly made sexual comments and discussed topics of a sexual nature around Plaintiff.  He spent a considerable amount of time texting and flirting with Ms. Blankenship.  At work, he touched her inappropriately by rubbing against her and grabbing her scarf to pull her closer to him. While at work, Dr. Tabbal frequently discussed content of a sexual nature and his recreational drug use.  At times he would tell Ms. Blankenship that he would like to "do [her]" right there in the office and make grunting noises and motions imitating sex.  He would describe the sex and drug use that he had with his ex-fiancé and his many dates in detail to Ms. Blankenship.  Dr. Tabbal would also frequently ask Ms. Blankenship out for lunch and drinks. He discussed the sexual exploits of Ms. Blankenship's coworkers at UT Southwestern.  He even showed her naked photos of Dr. Teotia holding a machine gun.  He made vague threats by suggesting that Plaintiff resign and showing an interest in violent activities.  Dr. Saxon noticed his sexual behavior and told Ms. Blankenship that was going to report the Frisco Office to UTSW Risk Management.

Dunja Morgareidge also singled Plaintiff out at work.  When Ms. Blankenship first started at the Frisco Clinic, Ms. Morgareidge created situations where Ms. Blankenship would need to visit Dr. Tabbal's home.  In December 2016, Ms. Blankenship sought Ms. Morgareidge's advice on how to deal with Dr. Tabbal's inappropriate behavior.  Ms. Morgareidge told Ms. Blankenship to "deal with it," and shortly thereafter, she began harassing Ms. Blankenship at work.  Some examples of Ms. Morgareidge actions include: not allowing Ms. Blankenship to attend ongoing trainings; not allowing Ms. Blankenship to attend administrative meetings that similarly situated employees were allowed to attend; removing Ms. Blankenship's supervisory responsibilities; improperly questioning Ms. Blankenship's requests for time off to attend to her children's medical needs; failing to investigate and respond to Ms. Blankenship's complaints of a hostile work environment; and inconsistently applying UTSW policies regarding attendance and vacation time.

(3) After being harassed, targeted, and eventually fired due to the conduct of Dr. Tabbal and Ms. Morgareidge, Plaintiff lives with constant emotional distress.  After having been fired for such a serious pretext, Plaintiff is humiliated, and her reputation is ruined.  As a result, she is not as involved in her community, is unable to move on, and has trouble even talking to others about what happened.  Plaintiff has trouble sleeping as a result of the trauma.  Plaintiff still fears for her safety from Dr. Tabbal.  She has added additional locks to her doors, and she fears for her children's safety.  See also Plaintiff's Response to Interrogatory No. 4.

(4) See Plaintiff's Response to Interrogatory No. 3.  As set out in the response to Interrogatory No. 3, Plaintiff reported the above misconduct on several occasions to several different UTSW

employees.  These employees include Kristen Goree, April Wilder, Olivia Perez, Kimberly Alexander, and Travis Gill.  Plaintiff requested actions ranging from meetings to a transfer to a different department.  These actions were all denied.

## INTERROGATORY NO. 6:

Please identify each and every person (including, but not limited to, medical doctors, psychologists, psychiatrists, nurses, hospitals, counselors, social workers, clergymen/religious leader, and/or any other medical, counseling, and/or health care service providers) from whom you have sought treatment as a direct result of any injuries, whether physical, mental, or emotional, which you claim to have sustained as a result of the events made the basis of this lawsuit. For each such person identified, please provide the following information: (a) the person's name, address, and telephone number; (b) a brief description of each injury or condition for which you consulted that person; (c) the diagnosis you received from that person; (d) a brief description of each medication, therapy, exercise, or other treatment of any kind prescribed or employed by that person to treat your alleged injury; (e) each date upon which you sought treatment from that person; and (f) any medical expenses you incurred.

## OBJECTION:

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories. Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.  Plaintiff objects to this Interrogatory as calling for premature expert discovery.  Plaintiff objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, Rule 26(b)(3) or any other Rule of the Federal Rules of Civil Procedure, or any other applicable privilege or immunity.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.

## ANSWER:

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

(a) Susan Laukoter, Licensed Professional Counselor. 3021 Gateway Dr. Ste. 240, Irving, TX 75063.  (b) The mental trauma caused by Dr. Tabbal and UTSW.  (c) N/A.  Licensed Professional Counselors are not permitted to make diagnoses under Texas law. (d)  Plaintiff has received therapy from Susan Laukoter.  (e) Twice in November (f) $200.00 and the treatment is ongoing.

(a) Thomas Tennant, MD.  (b) Continued anxiety, depression and trouble sleeping.  (c) Anxiety. (d) Prescription for duloxetine.  (e) November 27, 2018; December 6, 2018.  (f) $15 for prescription; $35 copay.

**INTERROGATORY NO. 7:**

State, specifically and in detail, your complete history of employment prior to your employment with UTSW, including all employers for whom you worked prior to and following your employment with Defendant including, without limitation, any period of self-employment, the name, address, and telephone number of each employer, the dates of your employment with each employer, your job classification, duties and responsibilities, the name of the person to whom you directly reported, your rate of pay and the reason for leaving each position.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

Plaintiff worked for Market Data Retrieval in Chicago from 2002 to 2004.  She worked as an account manager, which involved marketing.   Her salary was $45,000.00 per year plus commissions.  Her direct supervisor's name was Steve Gatlin.  Plaintiff left this job because she moved to Arizona when she got married.

Plaintiff worked for Pierson Education in Scottsdale, AZ from 2004 to 2005.   She worked as an account manager, selling technology to schools.  Her direct supervisor's name was Anita Wolfe.  Plaintiff earned a $50,000.00 base salary plus commission.  Plaintiff left this job when she moved out of the country for her husband's work.

**INTERROGATORY NO. 8:**

Please describe your attempts to find a job since the termination of your employment with UTSW.  Include in your response the following information: (a) name, address, and telephone number of each prospective employer with whom you have inquired about employment, sent a resume, and/or interviewed with for a job; (b) the date you made contact with each prospective employer; (c) the name and title of each person with whom you spoke concerning prospective employment, or to whom you directed any resume, cover letter, or other written or verbal employment inquiry at each listed prospective employer; (d) a description of the job duties for any specific job about which you inquired and/or for which you applied; and (e) the salary or salary range and benefits package specified for any job for which you applied and/or about which you inquired; and (f) whether an

offer of employment was made, and if so, whether you accepted or declined any offer, and if you declined any job offer please explain why such offer was declined.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

Plaintiff has been continuously submitting her resume through Indeed.com, Careers.com, and Linkedin.com.  She has received some calls and interviews, but she has not received a job offer.  Plaintiff has also scoured the want ads in local newspapers, read the Robert Half blog for career advice, and attended networking events.  While Plaintiff does not remember every position that she has applied for, she does remember many of them, listed below.

In November 2017, Plaintiff applied to at least the following positions: Sales Representative at Neiman Marcus in Dallas, Texas; Office Staff at Coppell ISD in Coppell, Texas; Sales Representative at ClubCorp in Dallas, Texas; Sales Representative at Stonebriar CC in Frisco, Texas; Executive Assistant at McKesson in Irving, Texas; Executive Assistant at 7-Eleven in Farmer's Branch, Texas; Sales Representative at Austin Finance Co. in Dallas, Texas; Executive Assistant at Frontier Communication in Irving, Texas; Administrative Assistant at Coppell ISD in Coppell, Texas; Account Manager at Billingsley Homes in Dallas, Texas; Sales Representative at United to Learn in Dallas, Texas; and Sales Representative at MDX Global in Dallas, Texas. Plaintiff also attended a job fair at Southlake Focus Group that month.

In December 2017, Plaintiff applied to at least the following positions: Personal Assistant at Care.com in Dallas, Texas; Personal Assistant at Moras Home Care in Dallas, Texas; Personal Assistant at Care.com in Grand Prairie, Texas; Sales Representative at Nordstrom in Frisco, Texas; Executive Assistant at iDeal HR; Executive Assistant at Protocol Labs; Executive Assistant at Skylight; Executive Assistant at MoneyGram in Dallas, Texas; Senior HR Assistant at Amazon in Coppell, Texas; Sales Representative at Amazon in Dallas, Texas; Human Resources at Amazon in Dallas, Texas; Human Resources at Container Store in Dallas, Texas; Administrative Assistant at Kelly Services in Dallas, Texas; Administrative Assistant at Southwest Airlines in Dallas, Texas; Nanny at Care.com in Dallas, Texas; and Personal Assistant at Care.com in Dallas, Texas.

In March 2018, Plaintiff applied to at least the following positions: Sales Representative at Varidesk; Charitable Giving Coordinator at A Family Place; Personal Assistant at Allegra

Marketing in Addison, Texas; Account Executive at Crawford Thomas Recruiting in Addison, Texas; Campaign Worker at Grassroots Campaigns in Dallas, Texas; Fundraising Operations Coordinator at Human Coalition; Marketing Assistant at a logistics company; Substitute at Gracepoint Church; Sales Representative at Heritage Construction; Sales Representative at MHI Partnership; Business Development Associate at Publishing Concepts; and Marketing Coordinator at Siemens.

In April 2018, Plaintiff applied to at least the following positions: Legal Assistant at Allstate Insurance; Administrative Assistant at BGC Partners; Office Manager at the Sharma Group; Executive Assistant at Moneygram; Administrative Assistant at PRA Group; Executive Assistant at One Technologies; Nonprofit Assistant at New Friends New Life; Sales Representative at Stoneside Blinds; Sales Representative at Citibank; Sales Representative at Neiman Marcus; and Sales Representative at Nordstrom.

In May 2018, Plaintiff applied to at least the following positions: Admission Counselor at The Stayton; Support Specialist at Volunteers of America; Marketing Specialist, Parks and Recreation at Active Network in Dallas, Texas; Marketing Automation Specialist III at Boeing in Irving, Texas; Digital Designer at Dallas Museum of Art in Dallas, TX; Marketing Specialist at CRM Web Solutions; and Outside Sales Representative at Fastsigns.  In May, Plaintiff also had an interview for a position as a Baylor Pharmaceutical Representative.  She also attended an online skills webinar hosted by LinkedIn.com.

In June 2018, Plaintiff applied for at least the following positions: Outside Sales Representative at AMBA; Podcast Host at MarketScale; Field Marketing Representative at Restaurant Depot; Territory Brand Ambassador at mVentix in Dallas, Texas; Outside Sales Representative at Fivestars; Sales Development Representative at Instant E-Training; Sales Representative at Tri-National, Inc.; Business Development Representative at Publishing Concepts.  In June, Plaintiff also attended a Liberty Mutual Hiring Fair and a Book Club Networking Event.

In July 2018, Plaintiff applied for at least the following positions: Field Organizer at Texas Campaigns; Marketing Specialist at YMCA of Metopolitan Dallas; Special Events Associate at Bass Pro Shops; Sales Coordinator at Hampton Inn; Multifamily Administrator at Billingsley Company; Customer Support at Abbott Labs; Sports Sales Specialist at BSN Sports; and Sales and Marketing Associate at Signature Biologics.

In August 2018, Plaintiff applied for at least the following positions: Director of First Impressions at Fusion Academy in Dallas, Texas; Inside Sales Administrator at Presidio in Dallas, Texas; Jr. Onboarding Specialist at Virtuity in Dallas, Texas; Account Coordinator at PepsiCo in Dallas, Texas; Administrative Specialist at PACCAR in Dallas, Texas; Admin Assistant at Integrated Operations AA in Dallas, Texas; Admin Assistant at Contra Costa in Dallas, Texas; Barista at Starbucks in Dallas, Texas; Hospital Account Specialist at Novartis; Human Resources Coordinator at Pepsico; Fundraising Coordinator at A Family Place; Social Media Coordinator at A Family Place; Administrative Assistant at Pathways Youth and Family;  Sales Representative at Auto Club in Coppell, Texas; Sales Representative at Liberty Mutual in Plano, Texas; Human Resources Generalist at Cosma International; Senior Staff Accountant at US Dermatology Partners

in Dallas, Texas; Outside Sales at PHMG in Dallas, Texas; Account Executive at Global Network Security in Dallas, Texas; and Administrative Assistant/Travel Coordinator at Exyte in Plano, Texas.  In August, Plaintiff also attended the Allied Job Fair and the Southlake Focus Group.

In September 2018, Plaintiff applied for at least the following positions: Personal Assistant at SSCP Management, Inx in Dallas, Texas; Regional Sales Account Executive at Crawford Thomas Recruiting in Dallas, Texas; Associate, Consumer Relations at CoreLogic in Irving, Texas; Marketing Coordinator at PulteGroup, Inc in Coppell, Texas; Trade Show Coordinator at Tyler Technologies, Inc. in Plano, Texas; Accounts Payable Clerk at Donovan & Watkins in Richardson, Texas; Chat/ Email Financial Services Professional at Charles Schwab in Westlake, Texas; and Business Solutions Specialist at The Container Store in Coppell, Texas.  In September, Plaintiff also attended A Family Place Auxiliary meeting for networking purposes.

In October 2018, Plaintiff applied for at least the following positions: Personal Assistant at Arteriors in Carrolton, Texas; Office Assistant at Parkway Communities in Coppell, Texas; Administrative Assistant at Tenet Headquarters in Dallas, Texas; Executive Assistant to the President at BG Development Group, Inc. in Dallas, Texas; Sales Associate at Nordstrom in Dallas, Texas; Beauty Advisor at Nordstrom in Dallas, Texas; Hospital Account Specialist at Novartis in Dallas, Texas; Staffing Coordinator at Legends in Frisco, Texas; Administrative Assistant for Congregational Care at Preston Hollow Presbyterian Church in Dallas, Texas; PR Assistant Manager at Neiman Marcus in Dallas, Texas; Marketing Coordinator at The Mom Project in Dallas, Texas; Talent Acquisition Sourcer at Jack Henry and Associates, Inc. in Allen Texas; Events Coordinator at Capital One in Plano, Texas; Personal Assistant and Companion at Care.com in Dallas, Texas; and Personal Assistant at Care.com in McKinney, Texas.

In November 2018, Plaintiff applied for at least the following positions: Inside Sales Representative at Liberty Mutual in Plano, Texas; National Sales Account Executive at Motel 6/ Studio 6 in Carrolton, Texas; Planned Giving Relationship Manager II at Compassion International; Accounts Payable at Parker and Lynch in Dallas, Texas; Int'l Travel Counselor at Carlson Wagonlit Travel in Irving, Texas; HR Operations Administrative Assistant at Amazon.com in Garland, Texas; Departmental Executive Assistant at Bell Flights in Fort Worth, Texas; Scheduler Administrator at Advantage Solutions in Coppell, Texas; Digital Recruitment Specialist at IBM in Frisco, Texas; Event Coordinator at Octagon in Dallas, Texas; Project Coordinator at Beauty Manufacturing Solutions Corp. in Coppell, Texas; Marketing Operations Specialist at Yooz, Inc. in Coppell, Texas; Event Coordinator & Marketing Assistant at It's For Charity! LLC in Dallas-Fort Worth, Texas; Youth Basketball Coordinator at Dallas Mavericks in Dallas, Texas; Personal Assistant/ Executive Assistant at SSCP Management in Dallas, Texas; Admissions Assistant at University of Dallas in Irving, Texas; and General Application for Coppell Independent School District in Coppell, Texas.

## INTERROGATORY NO. 9:

Please identify each and every employer for whom you have worked since the termination of your employment with UTSW, including the name, address, and telephone number of each employer, the dates of your employment with each employer, your job classification, duties and

responsibilities, the name of the person to whom you directly reported, your salary/rate of pay, and all benefits received, and the reason for leaving each position.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

None.

**INTERROGATORY NO. 10:**

Identify and describe with specificity each source of income or financial support you have had since the termination of your employment with UTSW, the date or dates upon which such income or financial support was received, and identify the amount, in terms of monthly or other periodic payments, of income or financial support for each source identified.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

Since Plaintiff was terminated from her employment with UTSW, she has received no income. She receives $2,100.00 per month in child support from Howard Blankenship.  To support herself, she has been withdrawing funds from her 401k retirement savings.

**INTERROGATORY NO. 11:**

Please list any litigation, court proceedings, or administrative proceedings in which you have been involved, including but not limited to, class actions, bankruptcy, family law matters, criminal matters, or personal injury litigation, and including but not limited to, any involvement as a plaintiff, class member, claimant, witness, defendant, intervener, or representative of a defendant. Please include the style of the litigation; the court in which it was pending; the date, place, and nature of your involvement; whether you provided statements or testimony under oath; and the outcome of the litigation or the results of your involvement.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

In 2015, Plaintiff was a party to her divorce proceeding, *In the Matter of the Marriage of Rachelle Blankenship v. Howard Blankenship and In the Interest of Grant Macon Blankenship and Aaron Chandler Blankenship*, Cause No. DF-14-15001, 255th Judicial District, Dallas County, Texas. She did not testify in the case.  The divorce was granted.  Plaintiff did testify under oath in the child custody proceedings that accompanied the divorce. She was granted the role of joint managing conservator with primary custody of the children.

Plaintiff provided a statement to the police regarding Howard Blankenship's domestic violence. This led to the criminal case, *Texas v. Howard Blankenship*, m-1415120, Dallas County, Court #11.  Plaintiff did not testify in that case.  The charges were dropped in exchange for restitution and a promise by Howard Blankenship to attend Batterers Intervention and Prevention Program counseling.

Plaintiff was involved in a bankruptcy proceeding in 2017, *In re Blankenship*, Case No. 17-33077-dh7, United States Bankruptcy Court, Northern District of Texas.  She filed for bankruptcy under Chapter 7.  She provided a statement of debts but did not testify.  The bankruptcy was granted on November 22, 2017.

**INTERROGATORY NO. 12:**

Have you ever been arrested for or convicted of the commission of any crime, offense, misdemeanor or felony? If your answer is "yes," please identify the nature of the matter for which you were arrested and/or convicted, the state and city in which you were arrested, the court which

had jurisdiction over you at the time of the arrest, and whether you were released, convicted, pleaded guilty, or pleaded no contest.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

In 2003, Plaintiff was convicted of Driving Under the Influence in California.  This occurred over fifteen years ago and has been expunged from Plaintiff's record.

**INTERROGATORY NO. 13:**

Please identify each and every person whom you intend to call to testify at the trial of this matter.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this Interrogatory as calling for premature expert discovery.  Plaintiff objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, Rule 26(b)(3) or any other Rule of the Federal Rules of Civil Procedure, or any other applicable privilege or immunity.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

This information is privileged work product.  Plaintiff will disclose her trial witness list in accordance with the Federal Rules of Civil Procedure and the Eastern District of Texas Local Rules.

**INTERROGATORY NO. 14:**

Please identify each document which you intend to use as an exhibit at the trial of this matter.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim. Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims. Plaintiff objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, Rule 26(b)(3) or any other Rule of the Federal Rules of Civil Procedure, or any other applicable privilege or immunity.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

This information is privileged work product. Plaintiff will disclose her exhibit list in accordance with the Federal Rules of Civil Procedure and the Eastern District of Texas Local Rules.

**INTERROGATORY NO. 15:**

Identify each person or entity, other than your attorneys, with whom you have communicated, either orally or in writing, regarding the allegations in your Complaint, and state the date of each communication, the substance of the communication and identify any documents that relate to such communication, including any and all communications with any other current or former employee of UTSW.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim. Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories. Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff. Plaintiff objects to this Interrogatory's use of the phrase "communicated" as vague, ambiguous, capable of multiple meanings, overly broad, and unduly burdensome. Plaintiff objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, Rule 26(b)(3) or any other Rule of the Federal Rules of Civil Procedure, or any other applicable privilege or immunity. Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony. Plaintiff objects to this Interrogatory as calling for information that Defendant can ascertain through materials already in its possession, custody, or control.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

Travis Gill; Kimberly Alexander; Dr. Sarah Saxon; Kristen Goree; April Wilder; Susan Laukoter; Sherri Toney; Dunja Morgareidge; Naureen Premani; Dominique Kichan, Suzy Weiser.

## INTERROGATORY NO. 16:

Identify each and every person from whom you, or anyone acting on your behalf, has obtained any oral, written, or recorded statements or communications relating to the allegations in this case, including each and every person who has agreed to testify on your behalf.

## OBJECTION:

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this Interrogatory as calling for premature expert discovery.  Plaintiff objects to this Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, Rule 26(b)(3) or any other Rule of the Federal Rules of Civil Procedure, or any other applicable privilege or immunity.  Plaintiff objects to this Interrogatory as calling for information that Defendant can ascertain through materials already in its possession, custody, or control.

## ANSWER:

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

Plaintiff has not obtained any statements at this time.

## INTERROGATORY NO. 17:

For each "unwanted sexual advance" by Dr. Tabbal as alleged in Plaintiff's Complaint, please state: (a) the date and time of each "unwanted sexual advance"; (b) the location of each "unwanted sexual advance"; (c) the nature and exact words and/or actions of each "unwanted sexual advance"; (d) any witnesses of each "unwanted sexual advance"; and (e) when, how, and to whom you "asked that the inappropriate behavior stop."

## OBJECTION:

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document

production or deposition testimony. Plaintiff objects to this Interrogatory as a premature contention interrogatory which should be deferred until discovery is near an end. Plaintiff objects to this Interrogatory as calling for information that Defendant can ascertain through materials already in its possession, custody, or control.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

*See* Plaintiff's live complaint on file in this action and documents produced in this case, including her previous reports of discrimination. *See* Plaintiff's answer to Interrogatory No. 5.

Dr. Tabbal's sexual advances began in September 2017. He would continually make vulgar, inappropriate comments. Sometimes these comments concerned Plaintiff directly, sometimes they concerned his sex life generally. On October 21, 2017, Plaintiff visited Dr. Tabbal's home under his and Dunja Morgareidge's direction to pick up some furniture for the office. When she arrived, Dr. Tabbal said that he had changed his mind about moving the furniture to the office and insisted that she stay for a glass of wine. Dr. Tabbal pressured Plaintiff to stay at his apartment to talk about work, have a drink, and ultimately have sex with him. He then invited her to attend a boxing match in New York City, stay at his home in Alpine, New Jersey and asked that he meet his personal friends. Plaintiff, however, immediately felt remorse and told Dr. Tabbal. She requested that he keep the weekend private and only have a professional relationship with her going forward.

Dr. Tabbal continued to flirt with Plaintiff at the office. He told her personal information about her coworkers, including rumors about inter-office sexual relationships. He showed her a naked photograph of Dr. Teotia. He told her that he fantasized sexually about other coworkers and had dated other employees of plastic surgery. If Plaintiff wore a dress, Dr. Tabbal would comment on her "sexy legs." He would text Ms. Blankenship regularly asking for her opinion on his daily clothing. In the office, he would reminisce about what happened at his apartment. He would tell Ms. Blankenship that he would like to "do [her]" right there in the office and make grunting noises and motions imitating sex. Since Ms. Blankenship was Dr. Tabbal's subordinate, he knew that she was his captive audience. Dr. Tabbal, in addition to the verbal harassment, would constantly touch Plaintiff inappropriately. He would get close to her neck to smell her perfume. He would grab Plaintiff by her scarf and pull her close to him. He would play music and make inappropriate jokes about sex. He attempted to rub up against her and gaze at her breasts inappropriately. Plaintiff responded to these advances by redirecting the conversation, moving away, trying to keep a distance and/or jerking away. These advances occurred at the Frisco office and primarily in his private office in the back room.

**INTERROGATORY NO. 18:**

Please state the factual basis for your contention in Plaintiff's Complaint that, "After some time, Dr. Tabbal's behavior turned more malicious; he frequently made lewd, disturbing, sexual gestures and comments directed at Ms. Blankenship," including: (a) the date and time of each "lewd,

disturbing, sexual gesture and comment"; (b) the location of each "lewd, disturbing, sexual gesture and comment"; (c) the nature and exact words and/or actions of each "lewd, disturbing, sexual gesture and comment"; (d) any witnesses of each "lewd, disturbing, sexual gesture and comment"; and (e) your response to each "lewd, disturbing, sexual gesture and comment".

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.  Plaintiff objects to this Interrogatory as a premature contention interrogatory which should be deferred until discovery is near an end.  Plaintiff objects to this Interrogatory as calling for information that Defendant can ascertain through materials already in its possession, custody, or control.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

As described in the answer to Interrogatory No. 17, Dr. Tabbal would frequently touch and grab Plaintiff despite her evident discomfort.  As time went on, Dr. Tabbal became more aggressive.  He would make comments that Plaintiff should quit, and Plaintiff heard rumors that he was looking for reasons to fire her.  He showed her pictures of his gun collection in a vaguely threatening manner.  He sometimes called her at work and would tell her that he was in bed.  Plaintiff was so concerned for her job and safety that she repeatedly called Human Resources, the Employee Assistance Program, and attempted to transfer to a different department.

**<u>INTERROGATORY NO. 19:</u>**

Please state the factual basis for your contention in Plaintiff's Complaint that, "Dr. Tabbal also invaded Ms. Blankenship's personal space and grabbed and touched her inappropriately," including: (a) the date and time of each occurrence; (b) the location of each occurrence; (c) the nature and description of each occurrence; (d) any witnesses of each occurrence; and (e) your response to each occurrence.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully

discovered the facts relating to each of its claims.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.  Plaintiff objects to this Interrogatory as a premature contention interrogatory which should be deferred until discovery is near an end.  Plaintiff objects to this Interrogatory as calling for information that Defendant can ascertain through materials already in its possession, custody, or control.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

Plaintiff refers Defendant to the answers to Interrogatory No. 17 and Interrogatory No. 18 and incorporates those answers here by reference.

**INTERROGATORY NO. 20:**

Please state the factual basis for your contention in Plaintiff's Complaint that, "[Plaintiff] sought the help of numerous personnel at UTSW, including other supervisors and the human resources department," including: (a) the identity of each of the "personnel" from whom you sought "help"; (b) the date Plaintiff sought help; (c) how Plaintiff sought "help"; (d) the nature of the conduct for which you sought "help"; and (e) the specific "help" requested.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as compound and comprising multiple, separate interrogatories.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.  Plaintiff objects to this Interrogatory as a premature contention interrogatory which should be deferred until discovery is near an end.  Plaintiff objects to this Interrogatory as calling for information that Defendant can ascertain through materials already in its possession, custody, or control.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

(a) Dunja Morgareidge.  (b) December 2016.  (c)  Plaintiff talked to Ms. Morgareidge regarding her deteriorating work relationship with Dr. Tabbal.  (d) Ms. Blankenship told Dunja that she was having problems working with Dr. Tabbal.  She told her that Dr. Saxon told her that she was going to report the office's inappropriate environment to Dr. Marple.  (e) Plaintiff sought advice on how to deal with Dr. Tabbal.

(a) Dunja Morgareidge.  (b) May 2017.  (c) Ms. Blankenship talked to Ms. Morgareidge regarding Dr. Tabbal's treatment of her.  (d) Plaintiff told Dunja that she was still having problems working with Dr. Tabbal and that he would try to unfairly blame her for his mistakes.  (e) Plaintiff sought advice on how to deal with Dr. Tabbal.

(a) April Wilder.  (b) June 2017.  (c) Ms. Blankenship called Ms. Wilder to set up an appointment. (d) Ongoing issues with Dr. Tabbal and Dunja Morgareidge.  (e) An appointment with the Employee Assistance Program to seek advice and options.

(a) Kristin Goree.  (b) June 5, 2017.  (c) Ms. Blankenship called Ms. Goree to set up an appointment.  (d) Ongoing issues with Dr. Tabbal and Dunja Morgareidge.  (e) An appointment with Human Resources to seek advice, report the behavior, and receive options.

(a) Kristen Goree.  (b) June 10, 2017.  (c) Ms. Blankenship orally discussed her work situation with Ms. Goree.  (d) Ms. Blankenship disclosed the difficult office environment at the Frisco office, specifically how Dunja and Dr. Tabbal were harassing her.  Regarding Dr. Tabbal, Ms. Blankenship told Ms. Goree that he was inappropriate and would yell a lot.  Regarding Dunja, Ms. Blankenship disclosed that Dunja would take credit for Ms. Blankenship's work, micromanage her, defame her to the other employees.  Ms. Blankenship disclosed a fear that she was being set up.  (e) Ms. Blankenship requested a transfer, but Ms. Goree informed her that she had to have been in her position for at least one year before she could qualify for a transfer.

(a) Kristen Goree.  (b) July 11, 2017.  (c) Ms. Blankenship called Ms. Goree.  (d) The deteriorating work environment.  (e) Plaintiff was following up on their previous discussion and seeking further guidance.

(a) Kristen Goree.  (b) July 19, 2017.  (c) Ms. Blankenship called Ms. Goree.  (d) The deteriorating work environment.  (e) Plaintiff was following up on their previous discussion and seeking further guidance.

(a) April Wilder.  (b) July 19, 2017.  (c) Ms. Blankenship called Ms. Wilder to discuss the hostile work environment and get suggestions on how to proceed.  (d) Ms. Blankenship told her that she had sex with Dr. Tabbal once and that he, despite her protests, had been sexually harassing her since then.  She also disclosed Dunja's harassment and attempts to micromanage her.  Ms. Blankenship disclosed that she was afraid that Dr. Tabbal and Dunja wanted to get rid of her.  Ms. Wilder indicated to Ms. Blankenship that she was not surprised at their actions.  (e) Ms. Blankenship sought guidance on how to handle the situation and preserve her job.

(a) UT Southwestern EAP.  (b) July 24, 2017.  (c) Plaintiff completed an intake form seeking help. (d) Ms. Blankenship stated that her work situation is making it difficult to do her job.  (e) Ms. Blankenship sought guidance on how to handle the situation and preserve her job.

(a) Employee Assistance Program.  (b) September 2017.  (c) Ms. Blankenship emailed the Employee Assistance Program.  (d) The deteriorating work environment.  (e) Ms. Blankenship sought to schedule another appointment with April Wilder.

(a) Kristen Goree.  (b) September 6, 2017.  (c) Ms. Blankenship called Ms. Goree.  (d) She explained that she still felt that Dr. Tabbal was attempting to set her up at work.  (e) Ms. Blankenship again expressed a desire to transfer to a different department or, at a minimum, set up an appointment with Ms. Goree and the other staff in a group setting.

(a) Kristen Goree.  (b) September 7, 2017.  (c) Ms. Blankenship called Ms. Goree.  (d) Continued difficulties at the Frisco Office.  (e) Ms. Blankenship discussed a potential transfer.

(a) Dr. Kenkel's coordinator.  (b) October 2017.  (c) Ms. Blankenship contacted Dr. Kenkel's coordinator via email. (d) Plaintiff requested a short meeting so that she could tell him about the sexual misconduct and harassment/hostile environment by Dunja and Tabbal. The coordinator told Ms. Blankenship that Dr. Kenkel said, "oh she just wants to say inflammatory things about Dr. Tabbal". Ms. Blankenship then decided to cancel the meeting and go directly to HR once again. (e) She requested a short meeting with Dr. Kenkel.

(a) Sherri Toney.  (b) October 9, 2017.  (c) Ms. Blankenship called Ms. Toney, Kristen Goree's supervisor. (d) The deteriorating work environment. (e) Plaintiff wanted to schedule a meeting with Human Resources.

(a) Kristen Goree.  (b) October 17-18, 2017.  (c) Ms. Blankenship emailed Ms. Goree. in an attempt to schedule an appointment with her.  She indicated that she had already spoken with the Employee Assistance Program and that she needed Ms. Goree's guidance on important issues.  (e) Plaintiff wanted to schedule an appointment with human resources.

(a) Olivia Perez.  (b) October 20, 2017.  (c) Ms. Blankenship called the Employee Assistance Program.  (d) Plaintiff told Ms. Perez how Dr. Tabbal and Dunja Morgareidge were harassing her and that she needed help.  (e) Plaintiff sought to set up another appointment with April Wilder. Ms. Perez informed Ms. Blankenship that the next available appointment was November 19, 2017.

(a) Kristen Goree.  (b) October 20, 2017.  (c) Ms. Blankenship emailed Ms. Goree.  (d) The deteriorating work environment.  (e) Plaintiff sought to set up an appointment.

(a) Kristen Goree.  (b) October 26, 2017.  (c) Ms. Blankenship emailed Ms. Goree in another attempt to set up an appointment with her.  (d) The deteriorating work environment.  (e) Ms. Blankenship sought guidance on dealing with her current work environment, a transfer, and to set up an appointment with Ms. Goree and the other staff in a group setting.

(a) Kristen Goree.  (b) October 30, 2017.  (c) Ms. Blankenship spoke with Ms. Goree.  (d) Ms. Blankenship told Ms. Goree about Dr. Tabbal's sexual harassment of her.  She started with Dunja's

insistence that Ms. Blankenship go to Dr. Tabbal's apartment on several occasions to help transfer items to the office.  She told her that inappropriate things had happened at the apartment.  Ms. Blankenship explained how shortly after that Dunja started harassing Ms. Blankenship.  She also told her that Dr. Tabbal would not work with her and was undermining her job.  She explained how she was afraid for her job because Dunja and Dr. Tabbal were attempting to sabotage her work.  Ms. Goree said that she would reach out to Dunja and set up a meeting.  (e) Ms. Blankenship sought guidance on dealing with her current work environment, a transfer, and to set up an appointment with Ms. Goree and the other staff in a group setting.

(a) UTSW EEOC.  (b) November 20, 2017.  (c) Plaintiff completed a report.  (d) Ms. Blankenship disclosed that she experienced sexual misconduct/ harassment from her supervisor; that she was terminated because she complained about the harassment; that she was falsely accusing of violating HIPAA; that she was not allowed to attend trainings; and that she reported lewd comments made by a coworker; that she was targeted through inconsistent applications of UTSW policy; and that she was demoted and given more work.  (e) Plaintiff sought to get her job back and/ or clear her name.

## INTERROGATORY NO. 21:

Please state the factual basis for your contention in Plaintiff's Complaint that, "UTSW intentionally discriminated against Ms. Blankenship in violation of Title VII by creating a sexually hostile work environment," which was "sufficiently pervasive to affect the terms, conditions, and privileges of her employment."

## OBJECTION:

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.  Plaintiff objects to this Interrogatory as a premature contention interrogatory which should be deferred until discovery is near an end.

## ANSWER:

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

*See* Plaintiff's live complaint on file in this action and documents produced in this case, including her previous reports of discrimination. *See* Plaintiff's answer to Interrogatory Nos. 5, 17, and 18.

Dr. Tabbal frequently discussed his sex life, he would rub against Plaintiff in the office, grab her by the scarf and pull her to him, he would frequently bring up Plaintiff's personal life, make comments about seeing Plaintiff in lingerie, etc…  Dunja Morgareidge encouraged the relationship

by requiring Plaintiff to go to Dr. Tabbal's residence.  After Plaintiff rejected Dr. Tabbal, Ms. Morgareidge also began to purposefully target Plaintiff.   Ms. Morgareidge would not allow Plaintiff to attend trainings or meet with human resources, she would harass her when she needed to take care of her sick children, would harass her for leaving her desk, etc...

## INTERROGATORY NO. 22:

Please state the factual basis for your contention in Plaintiff's Complaint that, "UTSW also intentionally discriminated against Ms. Blankenship in violation of Title VII by subjecting Ms. Blankenship to quid pro quo sexual harassment," including a description of the alleged reprimands and changes to your job duties.

## OBJECTION:

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.  Plaintiff objects to this Interrogatory as a premature contention interrogatory which should be deferred until discovery is near an end.

## ANSWER:

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

*See* Plaintiff's live complaint on file in this action and documents produced in this case, including her previous reports of discrimination. *See* Plaintiff's answer to Interrogatory Nos. 5, 17, and 18.

Dunja Morgareidge and Dr. Tabbal required Plaintiff to go to Dr. Tabbal's residence, which led to a sexual encounter.  When Plaintiff later ended the sexual relationship, Dunja Morgareidge and Dr. Tabbal began to target and harass Plaintiff at work.  Dr. Tabbal continued to made advances toward Plaintiff while at work.  After Plaintiff continued to reject these advances, Dr. Tabbal changed Plaintiff's job duties.  Dr. Tabbal became so hostile to Plaintiff due to her rejection that he and Dunja Morgareidge searched for any arguably legitimate reason to fire Plaintiff.  Plaintiff was fired due to their efforts shortly thereafter.

## INTERROGATORY NO. 23:

Please state the factual basis for your contention in Plaintiff's Complaint that, "UTSW retaliated against Ms. Blankenship by taking multiple adverse employment actions against her," including how, when and to whom you "opposed the sexual harassment practices of Dr. Tabbal" or engaged in any other protected activity, and identify by date, action, and decisionmaker each of the "multiple adverse employment actions" made the basis of your retaliation claim.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.  Plaintiff objects to this Interrogatory as a premature contention interrogatory which should be deferred until discovery is near an end.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

On August 2, 2017, Dr. Tabbal personally changed Plaintiff's job duties.

On October 26, 2017, Plaintiff was counseled by Dunja Morgareidge.  The decision to terminate Plaintiff had already been made by Dr. Tabbal and Dunja, and this "counseling" served no purpose other than to harass, intimidate, and provide documentation to bolster the illegitimate termination.  On October 30, 2017, Dr. Tabbal ran an unscheduled, self-audit of his medical records and alleged that Plaintiff accessed them without his permission.  He and Dunja Morgareidge then contacted the privacy office and requested Plaintiff's termination.   When the privacy office only recommended suspension, they pushed for Plaintiff's termination.

On November 8, this systematic harassment culminated in UTSW terminating Plaintiff's employment.  Dunja Morgareidge signed the Intent to Terminate Letter and the letter terminating Plaintiff's employment.

Plaintiff opposed the sexual harassment by telling Dr. Tabbal that she only wanted a professional relationship and continually moving away from his physical advances in the office.  As set out in the response to Interrogatory No. 3, Plaintiff opposed the harassment by reporting the above misconduct on several occasions to several different UTSW employees.  These employees include Kristen Goree, April Wilder, Olivia Perez, Kimberly Alexander, and Travis Gill.  Plaintiff requested actions ranging from meetings to a transfer to a different department.  These actions were all denied.

**INTERROGATORY NO. 24:**

If you contend any of the alleged "offensive physical contact" by Dr. Tabbal was outside the course and scope of his employment with UTSW or any governmental function, please state the factual basis for your contention.

**OBJECTION:**

28

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.  Plaintiff objects to this Interrogatory as a premature contention interrogatory which should be deferred until discovery is near an end.

**ANSWER:**

Subject to and without waiving its general and specific objections, Plaintiff responds as follows:

Defendant Tabbal was outside the course and scope of his employment with UTSW when he pressured Ms. Blankenship into having sex with him at his apartment.

**INTERROGATORY NO. 25:**

Identify all alleged admissions or declarations against interest made by or on behalf of UTSW concerning the subject matter of this action.

**OBJECTION:**

Plaintiff hereby incorporates her General Objections as if set forth verbatim.  Plaintiff objects to this Interrogatory as premature because discovery is ongoing and Plaintiff has not yet fully discovered the facts relating to each of its claims.  Plaintiff objects to this interrogatory to the extent it seeks information not in the possession, custody, or control of Plaintiff.  Plaintiff objects to this Interrogatory as calling for information that Defendant can ascertain through materials already in its possession, custody, or control.  Plaintiff objects to this Interrogatory to the extent it seeks information more easily ascertained through document production or deposition testimony.

**ANSWER:**

This is vague, ambiguous, calls for legal conclusions, and is protected work product.  Defendant is in the best position to determine what it believes are "admissions or declarations against interest" made by or on behalf of UTSW.

STATE OF _____ §
                            §
COUNTY OF _____ §

### VERIFICATION

BEFORE ME, the undersigned authority, on this day personally appeared RACHELLE

BLANKENSHIP, who, being first duly sworn, did state that the foregoing answers to

Defendant's First Set of Interrogatories to Plaintiff and the information contained in the answers

are true and correct and within her personal knowledge.

_____
**RACHELLE BLANKENSHIP**

SWORN TO AND SUBSCRIBED BEFORE ME this _____ day of _____,

2018, to certify which witness my hand and seal of office.

_____

Notary Public in and for the State of _____